WALD (WEHL v.). See Case No. 17,356.

## Case No. 17,055.

WALDEN v. CHAMBERLAIN.

[3 Wash. 290.] [1]

Circuit Court, D. Pennsylvania. April Term, 1814.[2]

BOTTOMRY BONDS—AUTHORITY OF MASTER—PROOF OF NECESSITY.

1. Libel on a hypothecation bond, executed by the former master of the vessel at Calcutta, the

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] [Affirmed in 1 Wheat. (14 U. S.) 96.]

Aurora being about to proceed to Philadelphia. The captain chartered the vessel to the libellant, for the voyage to Philadelphia, under another master; and at the same time executed the bond, part of the consideration of which was to obtain funds for the payment of a hypothecation of the vessel at Port Jackson (of the necessity of executing which, there was no proof), and part for repairs to be made of the vessel at Calcutta. The payment of the hypothecation given at Port Jackson, is not a valid consideration for the bond executed at Calcutta, as there is no proof of the necessity for executing it.

[Cited in Greely v. Smith, Case No. 5,750.]

2. The obligee in a bottomry bond ought always to prove the necessity for the advances, and that they were made to enable the master to prosecute his voyage. The necessity for such advances, and that they were made on the credit of the vessel, are never to be presumed. If the master has or can command other funds, he has no authority to subject the property of the owner to the payment of a premium beyond legal interest.

[Cited in The William & Emmeline, Case No. 17,687.]

3. Another conclusive objection to the validity of this bond, is, that before the advance was made and the bond given, the master had resigned his command of the vessel, and another master, appointed by the libellant, had succeeded to it.

[Appeal from the district court of the United States for the district of Pennsylvania.]

This is the case of a libel filed in the district court by the appellees, stating, that the brig Aurora, being in the year 1811 at Port Jackson, in New South Wales, and being in want of necessaries for the prosecution of the residue of her voyage; none of her owners being there, O. Smith, the master, having no other means to obtain money to enable him to prosecute his voyage, borrowed of Lord & Williams, for this purpose, £1482. 6s. 1¼d. sterling, on a bottomry hypothecation of the said brig, her tackle, &c., at a premium of 10 per cent. for the voyage from Port Jackson to Calcutta: that the brig arrived in safety at Calcutta, and the libellants being willing to charter the brig, to bring out a cargo to the United States, which she could not do, being again in want of necessaries to enable her to prosecute such voyage, and to free her from the bottomry to Lord & Williams; the master applied to them for a loan of money for these purposes, which they granted him to the amount of 18000 Sicca rupees, for which they took a bottomry bond on the said brig, on a voyage from Calcutta to Philadelphia, at the rate of 20 per cent. premium; which bond was executed by said Smith, on the 23d of December, 1811; that the libellants accordingly paid off the amount of the bottomry bond to Lord & Williams, amounting to 10713 Sicca rupees, 2 annas, and received the said bond from the agent of Lord & Williams, with a receipt thereon; that the brig arrived in safety at Philadelphia, whereby the said sum of 18000 Sicca rupees, with the stipulated premium, became due. The prayer of the libel is, that the brig may be seized, and condemned to be sold, for payment of this debt. The answer of the owners of the brig, not confessing any of the allegations of the libel, states, that on the 23d of December, 1811, the said Smith chartered the said brig to the libellants, for the voyage from Calcutta to Philadelphia, for the sum of 12000 Sicca rupees, which the libellants agreed to advance to the said Smith, as soon as the cargo should be laden on board; and it was further agreed by the charter party, that the libellants should hold the entire possession and command of the brig, during the continuance of the charter party, and should navigate her to the United States; that the said Smith had no authority from the respondents, to enter into the said charter party. Nevertheless, the libellants took possession of the brig, paid the said freight to Smith, and dismissed him from the command of the brig; and placed her under the command of another master, who navigated her to Philadelphia; that the libellants paid the said freight to Smith, knowing that he was addicted to intoxication and profligacy, instead of applying the same to the necessities of the vessel; no part of which, has Smith paid or accounted for to the respondents. They aver, that the whole 18000 rupees, were advanced without any justifiable cause whatever. The district court confirmed the claim of the libellants, to the amount of the Port Jackson bottomry, as well as to the residue of the consideration of the bottomry bond given at Calcutta; deducting from the 18000 rupees, the 12000 rupees paid by the libellants to Captain Smith, considering that that sum should have been applied to the necessities of the vessel, and not paid over to Smith; and decreed in favour of the libellants for the balance. [Case unreported.]

Chauncey & Binney, for appellants, contended, that this was not a good maritime hypothecation; the bond given at Port Jackson, which forms a part of the consideration of it, not being proved to have been given for necessaries for the vessel, nor given at the time the advances were made, or in consequence of an agreement to give such a security at the time the advances were made; nor was it given to enable the master to complete his voyage, as described by his owners, that being to Canton, and not to Calcutta; and consequently, it was not given with a view to the interest of the owners; all which circumstances should concur, to make a valid maritime hypothecation. Park. Ins. 413; 2 Marsh. Ins. (Condy's Ed.) 740, 1 note; Rucher v. Conyngham [Case No. 12,106]; Tunno v. The Mary [Id. 14,237]; Boreal v. The Golden Rose [Id. 1,658]; Ld. Raym. 157, 346; 2 Browne, Civ. & Adm. Law, 124. As to the residue of the consideration, the 12000 rupees paid for freight, furnished funds for the supply of necessaries at Canton, and the obligee should have so applied them. Again, the bond should express that the money is loaned for the necessities of the ship, or it is not good. 2 Emerig. Mar. Loans, 434, 439; 2 Marsh. Ins. (Condy's Ed.) 740. Another objection was made, that Smith was not master when he gave the bond; and of course, could not bind his owners by it.

Hopkinson & Rawle, for appellees.

The bond is prima facie evidence, that the advances were made for the necessities of the vessel; besides, it is proved, by a witness, that the vessel required, and received repairs at Port Jackson, though the amount expended for them is not proved. So, it is to be presumed, that a promise to secure advances made for the necessities of a vessel, was made when the advances were made. As to the form of the bond, this is not objectionable. Abb. Shipp. 103, 299; 1 C. Rob. Adm. 173, 176; 2 Emerig. Mar. Loans, 9. But the powers given to the master by his letter of instructions, authorized the master to bind the owners, by giving a security on the vessel, in cases where, as master, he might not have had such authority. These instructions state, that he is to proceed with his cargo, amounting to 8927 dollars, to the coast of Brazil; there to sell, and take on board another cargo, and to proceed with it to New-Holland; and there to sell the second cargo. Having thus got on board furs, specie, or good government bills, to proceed to the Pegus, and load with sandal wood; and if this can be got, to proceed to Canton. If only part of a cargo can be obtained there, he is to proceed to the Sooloo islands or others, for trade in pearls, birds' nests, and other articles, suited for Manilla or Canton; "at one of which ports," they say, "we expect you to close the first part of your adventure, by remitting to us all the funds accumulated, reserving only enough for your operations in those seas. The first adventure being thus ended, we leave to your judgment the future destination of the brig, and the kind of trade proper to be adopted —either to continue trade to the Pegus, Sooloos, or other islands, or to engage in trade between Canton and the north-west coast of America; but Canton should be the place to conclude all your adventures. Finally, notwithstanding all that is stated, as orders, we do not intend to embarrass your proceedings in any way; and therefore, confiding in your judgment, we leave you free in all situations, to act as you may think best for our interest. We will add, however, that you have no authority to draw on us, nor to negotiate for us, farther than as relates to the vessel, cargo, and proceeds thereof, in your hands; so that in any event, you are not to engage us in any responsibility. Hence, the negotiating the bills, as well as every other transaction during the voyage, must be done on your responsibility only, as though you were the owner of vessel and cargo. You will understand, that we are known to you only as persons with whom you are hereafter personally to account for the property now embarked in vessel and cargo, and are not to be made responsible for any thing more."

WASHINGTON, Circuit Justice. The question which arises in this cause is, whether the bond given at Calcutta, constitutes a valid hypothecation of the vessel? To decide this, the consideration of the bond, and the circumstances under which it was given, must be inquired into. The legal principles which apply to maritime hypothecations, have been frequently stated in this court. It has been laid down, that to give validity to such a bond, the necessity of raising money in this way, should be clearly shown by the obligee; and it should also appear to have been obtained, in order to enable the master to prosecute his voyage. If the master has, or can, command other funds, he has no authority to subject his owners' property to the payment of a premium, beyond the legal interest of money. It is also necessary, that the loan should be made upon the credit of the vessel, and not that of the master or owner; because in the latter case, the necessity for giving such an hypothecation, could not exist. Consequently, the master has no authority to hypothecate in this way, for antecedent advances made, not upon the faith of such a security. How do these principles apply to the consideration of the bond given to the libellants? That is composed of a bottomry bond, given by Captain Smith to Lord & Williams, at Port Jackson, which was discharged at Calcutta by the libellants; and of advances made by the libellants to Captain Smith, at Calcutta, for the purpose of enabling the Aurora to perform her voyage to the United States. No evidence has been offered to prove the consideration for which the Port Jackson bond was given, except a general statement made by Clark, in his deposition, that the brig was in want of necessaries at that place, and that she received repairs there. But no account is furnished, nor proof exhibited, to show, whether the whole, or what part of the consideration of that bond, was required for the necessities of the vessel, or that they were such as might probably require such a sum to relieve them. This, however, is not the objection which we deem most fatal to this bond. It does not appear, that the loan was made on the credit of a hypothecation of the vessel; and unless it was, the master had no authority to bind his owners or their property, by giving such a security. It is contended, that this ought to be presumed, the bond itself being prima facie evidence of that fact. However this might be, in a case fairly open to presumption, the argument is inadmissible upon general principles, where the recitals in the bond contradict the presumption. Now, in this case, it is expressly stated in the bond, that the necessaries for the Aurora, had been furnished at various times and places, as well previous to her sailing from Port Jackson, in September, 1810, as at various times since; and, also, on the present voyage. Where the advances are made at one time, and the security is taken long afterwards, particularly after the vessel has been exposed to sea risks, by having performed an intermediate voyage, as happened in this case, the presumption is, that the advances were made on the personal credit of the master or owners, or else the security would have been taken at or about the time when

the debt was incurred. But there is no room for presumption, in this case, for another reason, which is, that it is proved by Clark, that Captain Smith was imprisoned for the debts he had incurred on account of the vessel; and also, that the brig received nearly all the repairs put upon her, before the first voyage which she made from Port Jackson. This evidence shows strongly, that the master had obtained from other persons than Lord & Williams, what articles were necessary for his vessel, upon his personal responsibility; and that the advances made by Lord & Williams, were not to enable the vessel to prosecute her voyage to Canton, but principally to relieve the captain from confinement, and to enable him to accommodate Lord & Williams, by transporting a cargo for them to Calcutta.

As to the advances said to have been made at Calcutta, to Captain Smith, for the necessities of the Aurora, to enable her to perform a voyage thence to the United States, many reasons have been assigned, why they cannot constitute a consideration for a maritime hypothecation. One of them, we think, is conclusive; and consequently, the others need not be examined. No person is authorized to give such a bond, but the master of the vessel; and it is most obvious, that on the 23d of December, 1811, when this bond bears date, Lee, and not Smith, was the master. It is impossible to be so blind, as not to see that the bond and charter party, though dated on different days, were simultaneous, if not in their execution, at least in relation to the contract which formed the basis of those instruments. The circumstance which proves this fact incontestibly, is, that Captain Lee (the master appointed by the libellants, and not substituted by Smith), both by his affidavit, and by his account of the disbursements made for the vessel at Calcutta, proves, that he assumed the command on the 17th of December, six days before the bottomry bond bears date, and before any advances even were made for the necessities of the vessel. These advances, therefore, were made to a master appointed by the very persons who made them, and not to the one who hypothecated the vessel. The affectation of Smith, in giving sailing instructions to Lee, in January, 1812, is too thin to conceal the real nature of this transaction. If, then, this be not a valid hypothecation, under the general authority of Smith, as master, is it so in virtue of any powers given to him by the instruction of his owners? These instructions contemplate two objects—the employment of the vessel, and the means of accomplishing it. As to the first, the powers given to Smith were unlimited. The voyages marked out by the owners, seem to have been intended merely as hints, suggested in the way of advice; and lest he should be led to construe them otherwise, the writers add the following explanatory clause —"Finally," &c. See ante. Seeming, however, to apprehend, that this sweeping sentence might be understood to extend to the means of accomplishing the objects of the trade, in which

he was to engage, they express themselves immediately as follows:—"We will add, however," &c. See ante. This latter clause, is to be considered rather as a limitation, than an extension of the authority which, as master, Smith would have possessed. As master, he would have had power to bind, not only the vessel and cargo by an hypothecation of them, but also the owners personally, which latter power is here denied him. The authority, therefore, of Smith, to hypothecate the vessel, remained precisely as it stood under his general authority as master; and not only so, but it was connected with his character as such. The moment he threw off that character, or bound himself to do so, and resigned the management of his vessel to another master, his power to bind his owners, or their property, in virtue of his instructions, as well as of his general authority as master. ceased; and although the libellants may have a very just claim for advances fairly made for the use of this vessel, and in order to enable her to return to the United States, yet it is not such a one, as a court of admiralty can enforce. Decree reversed, with costs, and libel dismissed.

Affirmed. on an appeal to the supreme court [1 Wheat. (14 U. S.) 96.]